**NEWMAN WILLIAMS**
A PROFESSIONAL CORPORATION

BY: GERARD J. GEIGER, ESQUIRE                    ATTORNEYS FOR: Defendants
LAW OFFICES
712 MONROE STREET
STROUDSBURG, PA 18360-0511
(570) 421-9090 (voice)
(570) 424-9739 (fax)
ggeiger@newmanwilliams.com (email)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| E.J. a minor, by IRINA MAYMAN, mother<br>                    Plaintiff<br>v.<br>ROBERT JOHNSON et al.,<br>                    Defendants | NO. 3:23-cv-1636<br><br>Jury Trial Demanded<br><br>(MEHALCHICK, J.) |

## Defendants' Statement of Facts
## In Support of Motion for Summary Judgment

The defendants, Robert and Maria Johnson, aver pursuant to LR 56.1, that the following material facts are not in dispute and may be considered by the court in support of their motion for summary judgment:

1. Robert and Maria Johnson, live in a rural two-story home in Saylorsburg, Monroe County, which they share with their adult son, Gregory Johnson. Johnsons' Affidavit, ¶s 1, 2, exhibit A, p. 1.

2. The Johnsons have physical disabilities that restrict their mobility. They use wheelchairs and are unable to access the second floor of their home:

> "14:23   And you said you've never been
> 14:24  upstairs.
> 14:25   Why haven't you been upstairs?
> 15:1  A.   I can't climb stairs.
> 15:2  Q.   Okay.
> 15:3    And I know --- and what --- is
> 15:4  there an injury or something that you
> 15:5  cannot climb stairs any --- anymore?
> 15:6  A.   Yes, because I have --- yes.  I
> 15:7  have two ripped meniscus, and on the
> 15:8  back of my left leg there is a tendon
> 15:9  that's been compromised."

Maria Johnson deposition, pp. 14-15, exhibit A, p. 10.

> "15:21  A.   I've never climbed stairs in
> 15:22  this house.  Never.
> 15:23  Q.   Okay.
> 15:24  A.   I don't even know what upstairs
> 15:25  looks like."

Maria Johnson deposition, p. 15, exhibit A, p. 10.

> "24:25  And are you primarily --- are
> 25:1  you mobile now or are you in a
> 25:2  wheelchair?  How do you get around?
> 25:3  A.   I get around with a walker in
> 25:4  the house.  And when we go out they
> 25:5  throw me in a wheelchair."

Maria Johnson deposition, pp. 24-25, exhibit A, pp. 12-13.

3. Due to a hospitalization and ill health, Robert was not deposed.

4. The Johnsons' son, Gregory Johnson, resides in an adjoining apartment in the home with his fiancé, Ariel Cohen:

> "14:3  There's
> 14:4  a laundry area, small pantry, and then
> 14:5  a door into an apartment where my son
> 14:6  lives."

Maria Johnson deposition, p. 14, exhibit A, p. 10.

5. Greg assists his parents with their basic needs, which includes shopping and transportation to medical appointments:

> 36:3  A.   He's pretty busy with me ---
> 36:4  Q.   Okay.
> 36:5  A.   --- and his father.  He goes
> 36:6  shopping for us.  He --- if we have
> 36:7  doctor's appointments --- I don't
> 36:8  drive anymore, so he takes --- he
> 36:9  drives to doctor's appointments.

Maria Johnson deposition, p. 36, exhibit A, p. 15.

6. Neither of the defendants drive or leave their home without their son's assistance. Johnson affidavit, ¶ 3, exhibit A, p. 3.

7. Gregory Johnson and Irina Mayman are the parents of two children, E.J. and R.J. who reside with their mother in New York. Amended Complaint, ¶ 1 (Doc. No. 9).

8. Irina Mayman admitted she was diagnosed with Munchausen by Proxy system, although she characterized the diagnosis as a "scam:"

> "44:21  Q.   Have you ever been diagnosed

> 44:22  with Munchausen by proxy syndrome?
> 44:23  A.   According to Lehigh Valley
> 44:24  Controller, who rose red flags in an
> 44:25  article posted in August 2023 for
> 45:1  misdiagnosing Munchausen by proxy in
> 45:2  northern Pennsylvania, alerting that
> 45:3  it's, unfortunately, a big, red flag
> 45:4  during the custody evaluations.
> 45:5  Unfortunately, I fell under that scam
> 45:6  and fraud."

Irina Mayman deposition, pp. 44-45, exhibit A, pp. 41-42.

> "46:11  I'm just
> 46:12  trying to figure out how it was that
> 46:13  people are saying you have that
> 46:14  syndrome.  Who said that?  Just this
> 46:15  --- it was in a news article that you
> 46:16  had the condition.
> 46:17  A.   No.  News article is describing
> 46:18  Dr. Otto's report in summary, that it
> 46:19  was a pandemic of diagnosis of
> 46:20  Munchausen by proxy during custody
> 46:21  evaluation, and that evaluations by
> 46:22  many other custody evaluators.  And I
> 46:23  fell under that fraud.
> 46:24  Q.   Okay.
> 46:25     So is it possible that it was
> 47:1  Dr. Otto who said that you suffer from
> 47:2  that condition?
> 47:3  A.   Whatever she mentioned in her
> 47:4  report.
> 47:5  Q.   But do you --- do you know if
> 47:6  it was Dr. Otto who said that about
> 47:7  you?
> 47:8  A.   This is within Dr. Ott's
> 47:9  report.
> 47:10  Q.   So she did say that you have
> 47:11  Munchausen by proxy?
> 47:12  A.   Yes.  Correct."

Irina Mayman deposition, pp. 44-45, exhibit A, p. 42.

9.     The article Mayman referenced, which confirms a court order directing her to seek therapy for Munchausen by Proxy, was reported by Pennlive: https://www.pennlive.com/news/2023/10/mom-sues-estranged-husband-after-venomous-snake-bites-their-son-in-pa-home.html ; article at exhibit A, p. 72.

10.    Munchausen by proxy syndrome, also known as factitious disorder imposed on another, is a condition where a caregiver, typically a parent, fabricates or induces illness in a person under their care, usually a child, to gain attention or sympathy.  It has been described as a form of child abuse. MedlinePlus Medical Encyclopedia, Munchausen Syndrome by Proxy, http://www.nlm.nih.gov/medlineplus/ency/article/001555.htm , as cited in *B.S. v. Somerset Cty.*, 704 F.3d 250, 254 n.3 (3d Cir. 2013).

11.    E.J. claims to have been bitten by a venomous snake his father showed him during a visit with his father, Gregory Johnson, at the defendants' home. Amended complaint, ¶ 29 (Doc. No. 9).

12.    Although E.J. claims in the complaint filed by his mother that it was a venomous snake that bit him, he suffered no symptoms from this alleged bite when he returned to his mother's home:

"54:12  Q.   Did you ever feel any symptoms

>     54:13  from your bite after you went back to
>     54:14  your mom's house?
>     54:15  A.   No."

E.J. deposition, p. 54, exhibit A, p. 632.

    13.    When she picked him up, EJ's mother, Irina Mayman, noticed no injuries to EJ, her son never complained about being injured, and Mayman only learned of this alleged bite six months after it occurred:

>     41:6    Now, when you picked up the
>     41:7  boys after the weekend that they were
>     41:8  at the house, did you see a Band-Aid
>     41:9  on E.'s finger?
>     41:10  A.   I didn't notice.
>     41:11  Q.   Okay.
>     41:12    Was it four to six months
>     41:13  before you learned --- before E. said
>     41:14  that he suffered from a snake bite?
>     41:15  A.   Yes.
>     41:16  Q.   All right.
>     41:17    In all that time, did E. ever
>     41:18  complain to you about pain in his
>     41:19  finger?
>     41:20  A.   No."

Irina Mayman deposition, p. 41, exhibit A, p. 42.

    14.    E.J. alleged that the bite occurred outside the Johnsons' home while they were watching TV with their other grandchild, R.J.:

>     "22:7  And who else was out there when
>     22:8  you were building this cage?
>     22:9  A.   Just me and my father.
>     22:10  Q.   Where was R.?
>     22:11  A.   In the living room.
>     22:12  Q.   How do you know he was in the

> 22:13  living room?
> 22:14  A.   With my grandmother, watching
> 22:15  TV.
> 22:16  Q.   Okay.
> 22:17     And where was your grandfather?
> 22:18  A.   I don't remember."

E.J. deposition, p. 54, exhibit A, p. 54.

    15.    The Johnsons were not present when this alleged bite occurred.

Id.

    16.    In fact, E.J .made no claims to having been bitten by a snake until six months later after Irina told him she had a dream about snakes:

> "52:8  Q.   But at some point, you must
> 52:9  have told your mother.
> 52:10    Right?
> 52:11  A.   Yeah.
> 52:12  Q.   When?
> 52:13  A.   After when she had, like, a
> 52:14  dream that she got bitten by a snake.
> 52:15  Then I told her."

E.J. deposition, p. 52, exhibit A, p. 61.

    17.    E.J. never told his grandparents he was bitten by a snake:

> "46:19  And is it true that you never
> 46:20  talked to your grandfather about the
> 46:21  snake bite?
> 46:22  A.   Never talked to him about the
> 46:23  snake bite."

E.J. deposition, p. 46, exhibit A, p. 60.

> "38:18  Did you tell your grandparents
> 38:19  that you were bitten?

38:20  A.   No."

E.J. deposition, p. 38, exhibit A, p. 58.

    18.   Irina was never in the Johnsons' home and thus can offer no testimony about the presence of snakes in their home:

> "20:15  Q.   Have you ever been in Robert
> 20:16  and Maria Johnson's house, inside?
> 20:17  A.   Not in Pennsylvania.
> 20:18  Q.   Well, okay.  And I'm referring
> 20:19  to the Pennsylvania house.  So you've
> 20:20  never been inside?
> 20:21  A.   No.
> 20:22  Q.   How often have you been there
> 20:23  when you've been outside?
> 20:24  A.   I'm sorry?
> 20:25  Q.   Did you ever go to the house?
> 21:1  A.   No."

Irina Mayman deposition, pp. 20-21, exhibit A, p. 35.

    19.   E.J. has no knowledge whether the defendants were aware of the presence of snakes:

> "61:6  Q.   Do you know whether your
> 61:7  grandparents were --- whether they
> 61:8  knew that there was a snake in the
> 61:9  house before you were bitten?
> 61:10  A.   I don't know.
> 61:11  Q.   You never asked them?
> 61:12  A.   I never asked them."

E.J. deposition, p. 61, exhibit A, p. 64.

20. The Johnsons were unaware of any injury to E.J. during his stay with them that week, including an injury from a snake bite. Johnsons' affidavit, ¶ 11, exhibit A, p. 5.

21. The Johnsons were not aware of any snakes in their house:

> "34:21    So is it your contention that
> 34:22  there were no snakes in your home?
> 34:23  A.   Never.
> 34:24  Q.   Okay.
> 34:25    Well, in this home you said
> 35:1  never, but --- but Greg had a snake.
> 35:2  I'm sorry.  But Greg had snakes when
> 35:3  he was growing up in your home.
> 35:4  A.   Yes.
> 35:5  Q.   Okay.
> 35:6     And is it your contention that
> 35:7  there were no snakes in this home in
> 35:8  Pennsylvania?
> 35:9  A.   Never."

Maria Johnson deposition, pp. 34-35, exhibit A, p. 15.

> "34:1    Do you recall Greg or R. or
> 34:2  anyone telling you that E. received a
> 34:3  snake bite?
> 34:4  A.   No.  There were no snakes."

Maria Johnson deposition, pp. 34, exhibit A, p. 15.

22. Greg Johnson also confirmed he kept no snakes at his parents' home:

> "32:7    And so --- so is it your
> 32:8  testimony that there were no snakes in
> 32:9  the property?
> 32:10  A.   Correct.  And my mother was

> 32:11  pretty adamant.  She didn't like
> 32:12  snakes.  She didn't really want them
> 32:13  here when I moved back in."

Gregory Johnson deposition, p. 32, exhibit A, p. 25.

23. The Johnsons had no legal right to the care, custody, or control of their grandson, E.J., and thus had no legal right of supervision which they breached. *D.C. v. Pittsburgh Pub. Sch.*, 415 F. Supp. 3d 636 (W.D. Pa. 2019).

24. During their visitation at the Johnsons' home, Greg's sons slept in a room on the second floor where his grandparents could not access:

> "38:1  A.   Now, where did they --- did
> 38:2  they sleep upstairs?
> 38:3  A.   Yes.  They slept above my
> 38:4  parents' living and bedroom.  That's
> 38:5  where the second floor is."

Greg Johnson deposition, p. 38, exhibit A, p. 27.

25. Irina has never been in the Johnsons' home and thus has no knowledge of snakes at the home:

> "20:15  Q.   Have you ever been in Robert
> 20:16  and Maria Johnson's house, inside?
> 20:17  A.   Not in Pennsylvania.

Irina Mayman deposition, p. 20, exhibit A, p. 35.

26. The Johnsons' disabilities prevented them from being on the second floor:

> "13:16    And now your home, can you
> 13:17  describe your home?
> 13:18  A.   Let's see.  You come in the
> 13:19  front door.  There's a staircase that
> 13:20  goes upstairs, but I don't know what's
> 13:21  up there.  I've never been up there.

Maria Johnson deposition, p. 13, exhibit A, p. 10.

27.    In support of the claim Irina filed on behalf of her son, E.J., he claimed he was frightened by hissing sounds from the attic of the Johnsons' home, which he attributed to the presence of snakes:

> "46:1  Q.   But you could hear hissing from
> 46:2  the attic?
> 46:3  A.   Yeah, because there's tiny
> 46:4  holes.
> 46:5  Q.   Because of what?
> 46:6  A.   Because there's holes in the
> 46:7  box.
> 46:8  Q.   There's holes in the box.
> 46:9  Okay.
> 46:10  A.   Yeah.
> 46:11  Q.   But the attic was closed off.
> 46:12    Right?
> 46:13  A.   There's a little crack open."

E.J. deposition, p. 46, exhibit A, p. 60.

28.    E.J. claims he told his grandmother about hissing sounds, but only after he claims to have been bitten in the Johnsons' yard:

> "45:8  A.   I grabbed the phone and started
> 45:9  to record the hissing sound, and then
> 45:10  she called me and I said, I got bitten
> 45:11  by a snake.  And she says, do you want
> 45:12  my son to be incarcerated?  And she

>   45:13  says I was punished.
>   45:14  Q.   Why would your dad be
>   45:15  incarcerated?
>   45:16  A.   Because she didn't want to get
>   45:17  in trouble.
>   45:18  Q.   You think that would get him in
>   45:19  trouble if a snake bit you?
>   45:20  A.   Yeah."

E.J. deposition, p. 45, exhibit A, p. 60.

   29.   The Johnsons' home has no attic:

>   "27:12    Is there also like an attic or
>   27:13  crawl space up in your home?
>   27:14  A.   No, we have no attic.
>   27:15  Q.   Okay.
>   27:16  A.   No attic, no crawl space.
>   27:17  There was none in the plans when we
>   27:18  bought the house, so no."

Maria Johnson deposition, p. 27, exhibit A, p. 13.

   30.   Maria Johnson denies either of her grandsons told her about

hearing hissing sounds in their home:

>   "29:10  Q.   And do you recall any time ---
>   29:11  okay.  So let's say in January of
>   29:12  2021.  And I know we're going back
>   29:13  almost four years.  Or anytime between
>   29:14  January and August of 2021 do you
>   29:15  recall the boys complaining at all
>   29:16  about hissing noises or being afraid
>   29:17  to be upstairs?
>   29:18  A.   No, never.  In fact, once a
>   29:19  month I have an exterminator come in
>   29:20  and exterminate the whole house.  I
>   29:21  have terrible, terrible dread of
>   29:22  anything like that, you know, bugs and

29:23  things.  So no, they never complained."

Maria Johnson deposition, p. 29, exhibit A, p. 14.

31. Even if E.J.'s statement was true, plaintiff produced no evidence that either Robert or Maria Johnson had knowledge of the presence of snakes before the alleged bite.

32. Robert and Maria Johnson have no knowledge of any snakes ever being in their Pennsylvania home. Defendants' affidavit, ¶ 15, exhibit A, p. 5.

33. E.J. never told his grandparents he was bitten by a snake:

"38:18     Did you tell your grandparents
38:19  that you were bitten?
38:20  A.   No."

E.J. deposition, p. 38, exhibit A, p. 58.

34. The defendants' physical disabilities prevented them from supervising their adult son's interactions with his own children.

                              NEWMAN|WILLIAMS

                              By: s/Gerard J. Geiger, Esquire
                                    Attorney I.D. 44099

Date: October 28, 2024

# CERTIFICATE OF USE OF
# GENERATIVE ARTIFICIAL INTELLIGENCE

I, Gerard J. Geiger, Esq., hereby certify that the following generative AI tools were used in the preparation of this document:

## 1. Specific AI Tools Used:

The generative AI tool used was LEXIS + AI.

## 2. Portions Prepared by AI Tool:

The following sections of the document were prepared with the assistance of the generative AI tool: LEXIS + AI:

   a. a search for Third Circuit cases referencing Munchausen by Proxy;

   b. a search for cases regarding grandparents' legal duties to supervise grandchildren.

## 3. Accuracy Check:

I affirm that I reviewed the accuracy of the portions of the document generated by AI, including all citations and legal authorities referenced therein, and all such information is accurate and supported by appropriate sources as required by law and the ethical standards of practice.

This certification is made in compliance with the Civil Practice Order issued by Judge Karoline Mehalchick on August 19, 2024.

NEWMAN|WILLIAMS

By: s/Gerard J. Geiger, Esquire
Attorney I.D. 44099

Date: October 28, 2024

Certificate Of Service

I hereby certify that, on this date, a copy of this document was served upon plaintiff's counsel via the court's ECF system.

NEWMAN|WILLIAMS

By: s/Gerard J. Geiger, Esquire
Attorney I.D. 44099

Date: October 28, 2024